UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| North Baton Rouge Matters; Black Youth Project 100; New Orleans Workers' Center for Racial Justice; American Civil Liberties Union of Louisiana; Louisiana Chapter of the National Lawyers Guild,<br><br>Plaintiffs,<br><br>-vs-<br><br>City of Baton Rouge; Baton Rouge Police Department; Carl Dabadie, Jr., in his official capacity as Chief of the Baton Rouge Police Department; Louisiana Department of Public Safety; Louisiana State Police; Col. Michael Edmonson, in his official capacity as Superintendent of the Louisiana State Police; East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in his official capacity as Sheriff of the East Baton Rouge Sheriff's Department; Kip Holden in his official capacity as the Mayor-President of East Baton Rouge Parish; Hillar C. Moore, III, in his official capacity as District Attorney for East Baton Rouge Parish,<br><br>Defendants. | CIVIL ACTION NO.:<br><br><br>**Motion for Temporary Restraining Order and Preliminary Injunction**<br><br>*Oral Argument Requested* |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by their undersigned attorneys, for their Complaint, allege as follows:

### Nature of Action

1.      Our Nation is built on a foundation of free speech, dissent, and protest; since our very founding, the American people have taken to the streets and sidewalks to make their voices heard on matters of public concern.

2.      Further, the right to be free from unreasonable seizure by the government is fundamental to the proper functioning of our criminal justice system, and reflects the Framers'

deep concern for personal security and their recognition of the potential for law enforcement excesses.

3.     This civil rights action is filed by organizations whose members have participated in and witnessed protests in Baton Rouge, Louisiana, over the past week. In response to the recent death of Alton Sterling at the hands of Baton Rouge police officers on July 5, 2016, members of the community have attempted to exercise these foundational rights—by joining together in peaceful protest to draw attention to the death of Mr. Sterling, the deaths of Black citizens at the hands of police across the country, and law enforcement's use of excessive force, particularly toward the Black community.

4.     Plaintiffs have engaged in this peaceful speech, association, and protest on the streets, sidewalks, and medians of Baton Rouge—traditional public fora where individuals' First Amendment rights are at their zenith. Unfortunately, this exercise of constitutional rights has been met with a military-grade assault on protestors' bodies and rights.

5.     Defendants have responded to peaceful acts of protest with unlawful restrictions on constitutionally protected activity and disproportionate deployment of militarized equipment and excessive force. Law enforcement officers have escalated peaceful situations; impeded protestors' entry or exit from demonstrations; threatened assault with chemical agents including mace and pepper spray; rounded them up in mass arrests; engaged in physical and verbal abuse; punished and wrongly arrested individuals engaged in constitutionally-protected speech; created an imminent risk of physical and constitutional harm to Plaintiffs and others engaged in lawful protest; and used objectively excessive force in effectuating arrests.

6.     These actions have been designed to intimidate protestors and deter the continued exercise of First Amendment rights. They amount to a widespread pattern of acutely unconstitutional law enforcement activity by Defendants, requiring this Court's immediate intervention to protect both public safety and the rights secured by the U.S. and Louisiana Constitutions.

7.     Specifically, law enforcement officers in Baton Rouge and high-ranking city and state officials have engaged in and ratified policies, practices, and conduct that violates Plaintiffs' clearly established constitutional rights by, among other actions:

a.  Excluding lawful protestors from public forum space, including sidewalks, neutral ground, and public property;

b.  Engaging with peaceful protestors in a militarized fashion, including full body gear, threatening the use of chemical agents, and keeping live automatic weapons trained on peaceful crowds;

c.  Arresting protestors for "obstruction" of a highway in the absence of any impact on traffic or vehicle safety;

d.  Giving contradictory and confusing *ad hoc* orders to protestors, then arresting individuals for noncompliance;

e.  Arresting legal observers and members of the press without probable cause;

f.  Forcing protestors off of public forum space and arresting them for trespass or failure to disperse;

3

g.  Arresting individuals for failure to disperse despite giving individuals inadequate notice or opportunity to leave;

h.  Entering a private home and unlawfully searching and seizing guests without probable cause;

i.  Engaging in widespread unreasonable searches and seizures of individuals arrested without probable cause and in bad faith;

j.  Failing to provide Miranda warnings to individuals arrested or to explain the charges against them; and

k.  Responding to nonviolent activity with unconstitutional levels of force, including physically tackling nonviolent protestors and using mace, taser charges, and/or pepper spray on nonviolent protestors.

8.      In so doing, Defendants have deprived Plaintiffs of rights secured under the First (freedom of speech, press, and assembly)and Fourteenth (rights of due process and equal protection) Amendments to the U.S. Constitution, and Sections Two (due process), Seven (freedom of speech and press), Nine (right of assembly and petition), Thirteen (rights of the accused), and Sixteen (fair trial rights) of Article I of the Louisiana Constitution.

9.      Plaintiffs have received and collated extensive testimonial and documentary evidence of civil rights violations by Defendants.

10.     Plaintiffs and their members, employees, and supporters—among many other protestors—continue to engage in protected public speech and protest related to police brutality and the killing of Black citizens by law enforcement. Due to Defendants' actions, Plaintiffs and

4

others not before the Court—many of whom are still in jail on invalid charges—have suffered and will continue to suffer irreparable harm to their constitutional rights. Plaintiffs therefore seek emergency review from this Court, and require immediate declaratory and injunctive relief to prevent the future loss of constitutional rights in Baton Rouge.

## JURISDICTION AND VENUE

11.     This case arises under the U.S. Constitution and the laws of the United States. The case presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331; this Court also has jurisdiction under 28 U.S.C. § 1343(3) to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the U.S. Constitution. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under the Louisiana Constitution.

12.     The case seeks remedies under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and Fed. R. Civ. P. 65. This Court may issue a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65(b).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

14.     Plaintiff American Civil Liberties Union of Louisiana (ACLU of Louisiana) was founded in New Orleans in January 1956 by a group of civil rights activists engaged in the battle to desegregate Louisiana. Mixed-race meetings were illegal at the time, and those who defied those laws – including the ACLU of Louisiana's founders - were at risk of arrest, police

5

harassment, and violence. For over 60 years, the ACLU of Louisiana has been at the forefront of

the fight to preserve the civil liberties of all of the people of Louisiana, fighting for the First

Amendment, for racial justice, and for due process and privacy rights. The ACLU of Louisiana

has 2,700 members, some of whom were at the protests on July 6 and 10th. The ACLU of

Louisiana's employees, including Candice Sirmon and Lily Ann Ritter, attended the protests on

July 6 and 10 and witnessed the events as legal observers. They were also told by law

enforcement to unlawfully disperse and were threatened with arrest. The ACLU of Louisiana's

members and employees intend to continue engaging in protest and the monitoring of

constitutional rights, but fear the continued violation of their constitutional rights, enforcement of

invalid restrictions on their protected activity, and the use of excessive force by law enforcement.

      15.     Plaintiff Black Youth Project 100 ("BYP100") is an activist member-based

organization of Black 18-35 year olds, dedicated to creating justice and freedom for all Black

people. BYP100 has a chapter in New Orleans, Louisiana.  BYP100 works to create justice and

freedoms for all Black people through building a collective focused on transformative leadership

development, direct action organizing, advocacy and education. BYP100 trains young black

activists in direct action grassroots organizing skills, so they can build the power needed to

transform our communities. BYP100 runs campaigns using on the ground and digital tactics

towards the goal of ending the criminalization of Black youth, racial profiling and police

brutality. BYP100 members have attended protest in Baton Rouge Louisiana over the past week

in protest over the murder of Alton Sterling.

16.     Plaintiff the National Lawyers Guild is the nation's oldest and most extensive network of public interest attorneys and human rights attorneys and legal workers in the United States. The Louisiana Chapter of the National Lawyers Guild consists of approximately 50 members including Louisiana- licensed attorneys and legal workers from across the state, in addition to law school affiliate chapters at Southern University Law Center, Loyola University College of Law, and Tulane University Law School.  The Guild also has more than 250 individual Louisiana allies and more than 200 trained Legal Observers that wear neon green hats to monitor and document police misconduct at demonstrations. The Guild has and is coordinating legal support for over 150 people arrested for protesting against the killing of Alton Sterling during the weekend of July 9-11, 2016 and has been and is operating a 24/7 Legal Hotline operated by licensed attorneys. The Guild provides legal support to social movements and works to ensure that human rights are respected and protected.

17.     Plaintiff the New Orleans Workers' Center for Racial Justice ("NOWCRJ") is a non-profit organization founded in the aftermath of Hurricane Katrina working to raise the voices of low-income community members, increase their collective participation in public policy making, and protect and defend their civil, labor, and human rights.  NOWCRJ supports Stand with Dignity, a membership organization committed to community organizing on civil, labor, and human rights issues affecting low income African American community members and their families. Members of Stand with Dignity, including Charles Joyner and Ricky Coston, attended the Baton Rouge protests on July 10th and witnessed Defendants' actions. Defendants' threatened them while Charles and Ricky were peacefully and lawfully protesting, and Charles

7

and Ricky left the protest to avoid indiscriminate arrest and aggressive police practices by a highly militarized police force in violation of their First Amendment rights. NOWCRJ Staff Attorneys were also present at the July 10 action, documenting the events as Legal Observers and then as pro bono attorneys helping secure arrested protesters' release from jail. The imminent threat of indiscriminate arrest and subjection to violent police practices violated their First Amendment rights and interrupted their abilities on behalf of NOWCRJ to monitor and defend protesters from unconstitutional law enforcement actions. NOWCRJ's members and staff intend to continue to engage in lawful, peaceful collective public action and monitor and defend the constitutional rights of others to do so. Given Defendant's previous actions since the murder of Alton Sterling, they experience reasonable fear over ongoing violation of their constitutional rights, enforcement of invalid restrictions on their protected activity, indiscriminate arrest, and the use of excessive force by law enforcement.

18.     Plaintiff North Baton Rouge Matters is a grassroots community organization. The organization was created to stop the violence, including police violence, in the North Baton Rouge community. North Baton Rouge Matters provides local North Baton Rouge residents essential resources to cultivate a foundation of trust amongst one another. The organization strives to provide the community with access to tools to ensure their voices are heard and that success are truly attainable. North Baton Rouge Matters is building its membership in the North Baton Rouge community. Since Alton Sterling's murder on July 5, 2016, North Baton Rouge Matters has organized around the issue of police violence in the community. North Baton Rouge Matters members have attended public marches, vigils, and rallies to protest the systemic and

8

racially indiscriminate brutality of the Baton Rouge Police Department. Members have a deep commitment to continued action, including protest.

19.     Defendant City of Baton Rouge is a unit of municipal government, and the place where the actions described in this Complaint occurred. The City is responsible for governing and overseeing the policies and actions of the Baton Rouge Police Department.

20.     Defendant Baton Rouge Police Department is a law enforcement agency with responsibility and control over monitoring protests and effectuating arrests in Baton Rouge. Defendant Carl Dabadie, Jr., serves as Chief of the Baton Rouge Police Department and is sued in his official capacity.

21.     Defendant Louisiana Department of Public Safety is state agency that provides safety services to the citizens of and visitors to the state of Louisiana.  The Louisiana State Police are a office and commission of the Department of Public Safety.

22.     Defendant Louisiana State Police is a law enforcement agency, which upon information and belief has been cooperating and working with the Baton Rouge Police Department and other local law enforcement agencies and sharing responsibility and control over monitoring protests and effectuating arrests in Baton Rouge over the past week. Defendant Colonel Michael Edmonson serves as Superintendent of the Louisiana State Police, and is sued in his official capacity.

23.     The East Baton Rouge Sheriff's Department is a law enforcement agency, which upon information or belief has been cooperating and working with the Baton Rouge Police Department and sharing responsibility and control over monitoring protests and effectuating

9

arrests in Baton Rouge over the past week. Defendant Sid J. Gautreaux, III is the Sheriff of the

East Baton Rouge Sheriff's Department, and is sued in his official capacity.

24.     Defendant Hillar C. Moore, III, is sued in his official capacity as the party

responsible for enforcing state criminal laws in the parish of East Baton Rouge. *See* La. Const.

Art. 5, § 826 ("Except as otherwise provided by this constitution, a district attorney, or his

designated assistant, shall have charge of every criminal prosecution by the state in his district.").

25.     All actions by Defendants, their officers, employees, or agents, described herein

were taken under color of law.

## FACTS

26.     On July 5, 2016, Alton Sterling, a Black man accused of no crime, was shot a

point-blank range by officers with the Baton Rouge Police Department after being tackled

and physically detained, on his back, by the two officers involved.

27.     Thousands of members of the Louisiana community have responded with anger

about the death of Mr. Sterling in particular, as well as broader patterns of aggressive

policing and racial disparities evident in law enforcement officers' use of force across the

United States. As a result, there have been demonstrations on the public streets, sidewalks,

and medians of Baton Rouge since the video images of Mr. Sterling's death came to light last

week.

28.     At these demonstrations, protestors are voicing their opinions about such issues of

public concern as the relationship between police and the community; the frequency with

10

which police officers shoot unarmed Black men; and the militarization of local police forces, among other topics. The protests have been overwhelmingly peaceful and law-abiding.

29.       Defendants' response to the demonstrations has included ordering peaceful protestors to disband and evacuate the streets and sidewalks, automatic ticketing  and arrest of protestor who steps foot on any paved surface adjacent to the road for obstruction—even in the absence of any actual obstruction—and constant use of military-style tactis and excessive force.

30.       Police have repeatedly interfered with peaceful protests on public sidewalks and private property. On the evening of July 10, police confronted protestors on Government Street and East Boulevard. Police initially blocked the street but left the sidewalks open. At approximately 7:30 PM, police advanced down East Boulevard and France Street brandishing batons and assault rifles, and closed off the sidewalk, leaving protestors without access to that space to protest or leave the area. At one point, protestors were standing on the public sidewalk abutting East Boulevard, where they were peacefully chanting at police. A large number of police in riot gear advanced on the protestors, driving many off of the sidewalk, including onto neighboring private property. Police grabbed and pushed some protestors to the ground and arrested them. Police arrested a reporter, who was clearly engaging in reporting activities. *See* Decl. of Karen Savage.

31.       Homeowner Lisa Batiste invited protestors onto her property on East Boulevard after police ordered the protestors to disperse from the street. With Ms. Batiste's permission, more than one hundred protestors gathered on her lawn and porch, and some protestors

11

entered her home. A large group of officers in riot gear then entered and remained on her property without permission, where they ordered protestors to leave the property, used force on protestors, including tackling and pushing some to the ground, and arrested a number of protestors. Police were informed by both Ms. Batiste and by protestors that the protestors had permission to be on the property. At one point, at least a dozen police crowded onto Ms. Batiste's porch, where they grabbed and pushed protestors standing inside the home's open doorway and forced them out of the house and off the porch. Police also arrested protestors standing or walking on the public sidewalk abutting Ms. Batiste's property.

32.     Throughout the protests, police have used aggressive tactics to interfere with protestors First Amendment rights, including using an armored vehicle to direct extremely loud sound waves at protestors using what appears to be "long-range acoustic device" (LRAD), which can create painfully loud sound transmissions. One of these vehicles was seen moving towards protestors, even as they were stopped in front of it, and made contact with a protestor.  Police have also brandished and pointed assault rifles and batons at protestors, and used police shields as they approached protestors and pushed them off private property. Police have used force on protestors who were standing and chanting peacefully, including tackling, pushing, hitting, and dragging them. Protestors have been bloodied and injured by this force.

33.     Police have arrested NLG legal observers and refused to speak with legal observers who have offered to help diffuse the situation.  When legal observers attempted to explain that the protestors were confused because the police instructions were inaudible on

12

the sound system the police were using the legal observer was ignored and dismissed.

Protestors were blocked in my police and were unsure whether they could safely leave

without being arrested because of the inaudible instructions, conflicting instructions and

witnessing other individuals being arrested and/or detained while attempting to leave.

34.     Police have interfered with the rights of reporters covering the protests, including

on July 9 ordering reporters into a small 10-foot-wide area, and then ordering those reporters

without credentials out of the area and threatening to arrest any who stepped into the street.[1]

At least three reporters were arrested on July 9, including WWNO reporter Ryan Kailath[2]

and WAFB assistant news director Chris Slaughter. Slaughter was standing on the sidewalk

along Airline Highway videoing protestors across the street. When he placed one foot on the

roadway to get a better angle, police ran across the highway and arrested him.[3] On the

evening of July 10, Juvenile Justice Information Exchange reporter Karen Savage was

arrested without being told why and despite identifying herself as a member of the press.[4]

35.     More broadly, individuals engaged in protest activity have also faced egregious

conditions in East Baton Rouge Parish Prison. Individuals engaging in legal support for

arrested protestors have documented that arrestees are stating that: Individuals are being

maced or pepper sprayed for comments or for engaging in protest songs while in prison,

individuals arrested on Sunday were only fed one meal after 24 hours in detention, two

---

[1]http://www.thedailybeast.com/articles/2016/07/11/baton-rouge-cops-throw-protesters-into-street-arrest-them-for-being-there.html

[2] http://www.nola.com/crime/index.ssf/2016/07/wwno_radio_reporter_arrested_i.html

[3] http://www.wafb.com/story/32410837/wafb-employee-among-journalists-arrested-at-baton-rouge-protest

[4] http://jjie.org/savage-arrested/276664/

individuals under 18 were held in an adult facility, protestors were being held in general

detention, approximately 40 to 50 protestors were being held in single small cells, caged

together inhumanely, and protestors were threatened and harassed, with one report of a

sheriff stating "one of you will be shot tonight." In addition, individuals in need of immediate

medical attention were being denied medical attention, including an individual with the

symptoms of a concussion, individuals who came into the jail with blood on them, and

individuals in need of insulin. *See Decl. of Willa Conway.*

## CAUSES OF ACTION

### COUNT I

### Freedom of Speech and Assembly

**Violation of First and Fourteenth Amendments to the U.S. Constitution and Article I, Sections Seven and Nine of the Louisiana Constitution**

36.        Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the

foregoing paragraphs of this Complaint as if set forth here verbatim.

37.        The First Amendment to the U.S. Constitution prohibits abridgement of freedom

of speech and assembly; the First Amendment is applied to the states through the Fourteenth

Amendment. Article I, Section Seven of the Louisiana Constitution prohibits the curtailment

or restriction of the freedoms of speech and of the press and guarantees every person the right

to "speak, write, and publish his sentiments on every subject." Article I, Section Nine of the

Louisiana Constitution protects peaceful assembly.

38.        Under 42 U.S.C. § 1983, every person acting under color of state law who

deprives another person of his or her constitutional rights is liable at law and in equity.

Additionally, under 42 U.S.C. § 1983, municipal defendants are "persons" liable for unconstitutional customs, practices, and policies, and failure to train their law enforcement officers.

39.    Defendants have deprived, and continue to deprive, Plaintiffs and numerous third parties of their rights under the First Amendment to the U.S. Constitution and Sections Seven and Nine of Article I of the Louisiana Constitution, including the rights to assemble, speak, and demonstrate in public fora such as public sidewalks and public areas adjacent to streets, and on private property with the consent of property owners.

40.    Upon information or belief, the Defendants and their high-ranking policymaking officials have intentionally developed and implemented customs, practices, and/or policies according to which protestors are detained, harassed, threatened, dispersed, and charged for allegedly obstructing vehicular traffic on public streets, even when the protestors are engaged in no actual obstruction and create no risk to pedestrian or traffic safety. These unlawful customs, practices, and/or policies caused the violation of Plaintiffs' constitutional rights to speak and assemble freely and will continue to chill their exercise of those rights.

41.    Upon information or belief, the actions above were taken pursuant to customs, policies, directives, practices, acts and omissions of the Defendants, who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein.

42.    The Defendants and their high-ranking policymaking officials knew or should have known of the serious risk that these customs, practices, and/or policies would result in

15

unconstitutional conduct. The Defendants failed to train police officers about the constitutional rights of individuals to peaceably associate and gather in public places including sidewalks and public areas adjacent to roadways and failed to prevent police officers from violating these rights, despite actual or constructive knowledge of ongoing and repeated violations.

43.     Upon information or belief, unless restrained by this Court, Defendants will continue their practice of unlawfully arresting individuals engaged in public protest in public forum space (or private property to which they are invited), causing further irreparable harm to Plaintiffs.

## COUNT II

### Vagueness/Overbreadth

**Violation of the First Amendment and the Due Process Clause
of the Fourteenth Amendment to the U.S. Constitution and Article I, Sections Two, Seven,
Thirteen, and Sixteen of the Louisiana Constitution**

44.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if set forth here verbatim.

45.     The First Amendment to the U.S. Constitution and Article I, Section Seven of the Louisiana Constitution prohibit the abridgement of freedom of speech; the First Amendment of the U.S. Constitution is applied to the states through the Fourteenth Amendment. The Fourteenth Amendment to the U.S. Constitution and Article I, Sections Two, Thirteen, and Sixteen prohibit the criminalization of speech without due process.

46.     Statutes that vest unbridled discretion in state officials to regulate speech violate

16

the free speech and Due Process protections of the U.S. and Louisiana Constitutions because they are both overbroad and unlawfully vague. Plaintiffs and other protestors were repeatedly given contradictory and confusing directions, and announcements of dispersal orders, that were unclear, gave them no notice as to how to avoid arrest, and provided no opportunity for peaceful dispersal or continued peaceful exercise of rights to free speech and assembly.

47.      Under 42 U.S.C. § 1983, every person acting under color of state law who deprives another person of his or her constitutional rights is liable at law and in equity. Additionally, under 42 U.S.C. § 1983, municipal defendants are "persons" liable for unconstitutional customs, practices, and policies, and failure to train their law enforcement officers.

48.      Defendants engaged in actions, policies, and practices that deprived Plaintiffs of a reasonable opportunity to understand what conduct was criminal. The actions of Defendants also authorized and encouraged arbitrary and discriminatory enforcement of the criminal laws in violation of the First and Fourteenth Amendments to the U.S. Constitution and the speech and Due Process protections of the Louisiana Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to:

1.      Schedule and hold an immediate hearing,

2.      Issue a temporary restraining order (and thereafter Preliminary and Permanent

Injunctive Relief) against Defendants and their officers, employees, and/or agents,

and those acting on their behalf or in concert with them:

a.      Prohibiting Defendants, their officers, employees, or agents, and those acting on their behalf or in concert with them from ordering individuals who are violating no law to refrain from gathering on public sidewalks and other public fora, or threatening or effecting arrest for non-compliance.

b.      Enjoining Defendants, their officers, employees, or agents, and those acting on their behalf or in concert with them from stopping, citing, and dispersing individuals for allegedly "obstructing vehicular traffic" when in a public place and not actually obstructing vehicular traffic or when not creating a risk of danger to pedestrians or vehicular traffic.

c.      Prohibiting Defendants, their officers, employees, or agents, and those acting on their behalf or in concert with them from engaging with gatherings, organized protests, or individuals engaged in protected First Amendment activity unless each carries on their person clearly visible personal identification, including accurate name, law enforcement agency, and identifying number.

d.      Prohibiting Defendants, their officers, employees, or agents, and those acting on their behalf or in concert with them from utilizing chemical agents on such gatherings unless as a last resort to prevent an immediate threat to public safety, and unless any use is preceded by clear and unambiguous warnings, and an adequate opportunity for all protestors to disperse without risk of arrest or entrapment.

e.      Prohibiting Defendant Moore, his officers, employees, or agents, and those acting on his behalf or in concert with him from initiating or continuing criminal prosecutions against protestors for obstruction or failure to appear in the absence of documented evidence that they actually impeded traffic and that they had adequate notice and opportunity to disperse without threat of arrest. Additionally prohibiting Defendant Moore and his officers, employees, or agents and those acting on his behalf or in concert with him from initiating or continuing criminal prosecutions against protestors for inciting a riot for the simple act of engaging in a protest.

18

      f.      Prohibiting Defendants, their officers, employees, or agents, and those acting on their behalf or in concert with them from utilizing chemical agents on such gatherings unless as a last resort to prevent an immediate threat to public safety, and unless any use is preceded by clear and unambiguous warnings, the approval of the Governor of the State of Louisiana, and an adequate opportunity for all protestors to disperse without risk of arrest or entrapment.

3.     Award Plaintiffs nominal damages,

4.     Award Plaintiffs costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or any other applicable law; and

5.     Grant Plaintiffs such other and further relief as is just and proper under the circumstances.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: July 13, 2016

                              Respectfully Submitted,

                              */s/ Ronald L. Wilson*
                              RONALD L. WILSON (#13575) (Lead Attorney)
                              701 Poydras Street, Suite 4100
                              New Orleans, Louisiana 70139
                              PH: (504) 525-4361
                              FAX: (504) 525-4380
                              E-mail: cabaral2@aol.com

19

_s/ Candice C. Sirmon_____
Candice C. Sirmon, T.A., La. No. 30728 (Notice Attorney)
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, LA 70156
(504) 522-0628
Fax: (504) 613-6511
Email: csirmon@laaclu.org

/s/ Sima Atri
Sima Atri (La. Bar No. 36792)
New Orleans Workers' Center for Racial Justice
217 North Prieur Street
New Orleans, Louisiana 70112
Telephone: (504) 264-4209
satri@nowcrj.org

**Attorneys for Plaintiffs**