# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

Black Youth Project 100; New Orleans Workers' Center for Racial
Justice; American Civil Liberties Union of Louisiana; Louisiana Chapter
of the National Lawyers Guild; North Baton Rouge Matters,

                      Plaintiffs,

-vs-

City of Baton Rouge: Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton Rouge
Police Department; Louisiana State Police; Louisiana
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State Police;
East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in
his official capacity as Sheriff of the East Baton Rouge Sheriff's
Department:; Kip Holden in his official capacity as the Mayor-
President of East Baton Rouge Parish; Hillar C. Moore, III, in
his official capacity as District Attorney for East Baton Rouge
Parish; Department of Public Safety (Louisiana State Police)

                    Defendants.

CIVIL ACTION
NO.:

**Motion for Temporary
Restraining Order
and Preliminary
Injunction**

*Oral Argument
Requested*

## DECLARATION OF **MARJORIE ESMAN**

Pursuant to 28 U.S.C.§ 1746, I declare as follows:

1. I am Executive Director of the ACLU of Louisiana, a position I have held since
   September 1, 2007.

2. The ACLU of Louisiana is also known as the American Civil Liberties Union of
   Louisiana.

3. The ACLU of Louisiana is the Louisiana state affiliate of the national organization
   known as the ACLU or the American Civil Liberties Union, an organization
   dedicated to the protection of the civil rights and civil liberties of everyone across
   the United States. The ACLU of Louisiana was formed in 1956 as part of the
   burgeoning civil rights movement of that time. The organization currently has over
   2700 active members and many more supporters across the state of Louisiana.

4. Since Alton Sterling's death on July 5, 2016, members and staff of the ACLU of Louisiana
   have attended marches, vigils, and rallies to observe and protest his needless death and the
   escalating tensions between the Baton Rouge community and the police.

5. Members of the ACLU of Louisiana have a right to attend and participate in future
   marches, vigils, rallies and other gatherings in Baton Rouge related to the events

surrounding the death of Alton Sterling. The ACLU of Louisiana fears that without a temporary restraining order and subsequent injunction against the named Defendants, the named Defendants may continue to violate the Constitutional rights of its members and others by wrongfully obstructing and dispersing them from public spaces; wrongfully detaining, searching, and arresting; and using excessive force.

6. I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 13th day of July 2016.

Marjorie R. Esman
NAME

SIGNATURE

# Exhibit B

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

American Civil Liberties Union of Louisiana; Louisiana
Chapter of the National Lawyers' Guild; New Orleans Workers'
Center for Racial Justice; Black Youth Project 100,

Plaintiffs,

-vs-

City of Baton Rouge; Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton Rouge
Police Department; Louisiana State Police; Louisinana
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State Police;
East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in
his official capacity as Sheriff of the East Baton Rouge Sheriff's
Department; Jeff Landry, in his official capacity as Attorney
General of the State of Louisiana; Kip Holden in his official
capacity as the Mayor-President of East Baton Rouge Parish;
Hillar C. Moore, III, in his official capacity as District Attorney
for East Baton Rouge Parish; Department of Public Safety
(Louisiana State Police)

Defendants.

CIVIL ACTION
NO.:

**Motion for Temporary
Restraining Order
and Preliminary
Injunction**

*Oral Argument
Requested*

## DECLARATION OF **SHAENA JOHNSON**

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Shaena Johnson. I was born on February 18th, 1985.

2. I am writing this statement in support of a temporary restraining order and preliminary
   injunction filed in federal court to enjoin the City of Baton Rouge, Baton Rouge Police
   Department, Louisiana State Police, Louisiana Department of Public Safety, East Baton
   Rouge Sheriff's Department, the State of Louisiana and East Baton Rouge District Attorney's
   Office from their ongoing violation of BYP100 of New Orleans and its members'
   constitutional rights.

3. BYP100 of New Orleans is a chapter of BYP100. BYP100 is an activist member-based
   organization of Black 18-35 year olds, dedicated to creating justice and freedom for all Black
   people. The organization is a collective that is focused on transformative leadership
   development, direct action organizing, advocacy, and political education.

4. BYP100's mission is trifold. First, it trains young Black activists in direct action and
   grassroots organizing skills so they can build the power needed to transform their
   communities. Second, BYP100 mobilizes young Black leaders on a variety of issues directly
   impacting Black communities nationwide, including ending criminalization and dismantling

1 of 3

the prison industrial complex, expanding and securing rights for women and members of LGBTQIA communities. Third, BYP100 runs campaigns using a wide variety of tactics geared towards ending criminalization of Black youth, racial profiling, and police brutality.

5. The New Orleans Chapter formed in November 2016, in response to rampant police brutality in New Orleans.

6. Since Alton Sterling's homicide on July 5, 2016, members of New Orleans BYP100 chapter have attended marches, vigils, and rallies to protest the systemic brutality of the Baton Rouge Police Department that resulted in Mr. Sterling's wrongful death.

7. BYP100 has a vested interest in this particular Motion for Temporary Restraining Order and Preliminary Injunction because the named Defendants have continuously violated our members' constitutional rights since the homicide of Alton Sterling.

8. On the afternoon and evening of July 10, 2016, five members from the New Orleans Chapter of BYP100 and two members of the Chicago Chapter of BYP 100 attended various public protests in Baton Rouge (please see declarations from Randolph Carr and Ejike Lawrence Obineme Jr. A summary of what our members witnessed and experienced is included below.

   • Our members witnessed extreme brutality from the Defendants named in this suit, which included the police tasing and macing protesters, physically striking protesters, and arresting protesters en masse.

   • Our members witnessed the Defendants named in this suit arrest protesters on public places like sidewalks and the yard of a private residence after being invited by the homeowner onto her property.

   • Our members witnessed the Defendants named in this suit obstruct protesters from being able to protest on public places like sidewalks.

   • Our members experienced first-hand the Defendants named in this suit obstruct public places – namely sidewalks and streets – which inhibited them from being able to exercise their First Amendment rights to free speech and freedom of assembly.

   • Our members witnessed the Defendants named in this suit disperse protesters exercising their First Amendment rights to free speech and freedom of assembly in public places – namely sidewalks.

   • Our members experienced first-hand the Defendants named in this suit disperse them from public places – which inhibited them from being able to exercise their First Amendment rights to free speech and freedom of assembly.

9. The named Defendants behavior on the evening of July 10, 2016, as well as during the preceding days, caused significant fear and trauma to the BYP100 members that acted well within their First Amendment rights to free speech and freedom of assembly.

10. As described above, BYP100 New Orleans members witnessed ongoing violations by the

named Defendants of the public's First, Fourth and Fourteenth Rights by the Defendants.

11. Members of the BYP100 New Orleans Chapter would like to attend and participate in future marches, vigils, rallies and other gatherings in Baton Rouge related to police brutality and the wrongful death of Alton Sterling. This includes the scheduled funeral of Mr. Sterling on July 15, 2016 and other public gatherings in the coming week.

12. The named Defendants ongoing, systemic, and violent conduct towards protesters, BYP100 members, and the general public has resulted in a chilling effect on the plans of BYP100 and its members to continue exercising their First Amendment rights to free speech and freedom of assembly in Baton Rouge.

13. The BYP100 New Orleans chapter fears that without a temporary restraining order and subsequent injunction against the named Defendants, that the named Defendants will continue to violate BYP100 New Orleans chapter members' Constitutional rights by wrongfully obstructing and dispersing us from public spaces; wrongfully detaining, searching, and arresting; and using illegal excessive force on the members of the New Orleans Chapter of BYP100

14. As such, BYP100 of New Orleans is requesting an injunction issued against the Defendants so that our members can exercise their constitutional rights in Baton Rouge.

15. I declare under penalty of perjury, that the foregoing is true and correct.


Executed on this 12th day of July 2016.

Shaena Johnson
NAME                                    SIGNATURE

# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Black Youth Project 100; New Orleans Workers' Center
for Racial Justice; American Civil Liberties Union of
Louisiana; Louisiana Chapter of the National Lawyers'
Guild; North Baton Rouge Matters,

                                        Plaintiffs,

                      -vs-

City of Baton Rouge; Baton Rouge Police Department;
Carl Dabadie, Jr., in his official capacity as Chief of the
Baton Rouge Police Department; Louisiana Department of
Public Safety; Louisiana State Police; Col. Michael
Edmonson, in his official capacity as Superintendent of the
Louisiana State Police; East Baton Rouge Sheriff's
Department; Sid J. Gautreaux III, in his official capacity as
Sheriff of the East Baton Rouge Sheriff's Department; Kip
Holden in his official capacity as the Mayor-President of
East Baton Rouge Parish; Hillar C. Moore, III, in his
official capacity as District Attorney for East Baton Rouge
Parish,

                      Defendants.

CIVIL ACTION
NO.:

**Motion for Temporary
Restraining Order and
Preliminary Injunction**

*Oral Argument
Requested*

1. My name is May Nguyen. I was born on September 11, 1982

2. I am writing this statement in support of a temporary restraining order and
   preliminary injunction filed in federal court to enjoin the City of Baton Rouge,
   Baton Rouge Police Department, Louisiana State Police, Louisiana Department of
   Public Safety, East Baton Rouge Sheriff's Department, the State of Louisiana and
   East Baton Rouge District Attorney's Office from their ongoing violation of
   citizen's constitutional rights.

3. The Louisiana Chapter of the National Lawyers Guild is an organization that is part
   of the National Lawyers Guild. The National Lawyers Guild is the nation's oldest
   and most extensive network of public interest attorneys and human rights attorneys
   and legal workers in the United States.

4. I serve on the board of the Louisiana Chapter of the National Lawyers Guild and
   serve as its Secretary.

5. The Louisiana Chapter of the National Lawyers Guild consists of approximately 50 members including Louisiana licensed attorneys and legal workers from across the state, in addition to law school affiliate chapters at Southern University Law Center, Loyola University College of Law, and Tulane University Law School.

6. The Louisiana Chapter of the National Lawyers Guild also has more than 250 individual Louisiana allies and more than 300 trained Legal Observers that wear neon green hats to monitor and document police misconduct at demonstrations.

7. In light of the killing of Alton Sterling and the subsequent protests and police violence, the National Lawyers Guild has and is coordinating legal support for over 150 people arrested for protesting and has been and is operating a 24/7 Legal Hotline operated by licensed attorneys. The Guild provides legal support to social movements and works to ensure that human rights are respected and protected.

8. The National Lawyers Guild (NLG) was founded in 1937 as an association of progressive lawyers and jurists who believed that they had a major role to play in the reconstruction of legal values to emphasize human rights over property rights.

9. The National Lawyers Guild is dedicated to the need for basic change in the structure of our political and economic system. **We seek to unite the lawyers, law students, legal workers and jailhouse lawyers to function as an effective force in the service of the people, to the end that human rights shall be regarded as more sacred than property interests.**

10. The aim of the National Lawyers Guild is to bring together all those who recognize the importance of safeguarding and extending the rights of workers, women, LGBTQ people, farmers, people with disabilities and people of color, upon whom the welfare of the entire nation depends; who seek actively to eliminate racism; who work to maintain and protect our civil rights and liberties in the face of persistent attacks upon them; and who look upon the law as an instrument for the protection of the people, rather than for their repression.

11. The Louisiana Chapter of the National Lawyers Guild has a program called the Legal Observer Program. The Legal Observer® program is part of a comprehensive system of legal support coordinated by the National Lawyers Guild designed to enable people to express their political views as fully as possible, without unconstitutional disruption or interference by the government and with the least possible consequences from the criminal justice system. In addition to Legal Observers®, Guild attorneys provide legal defense for protestors who are arrested and bring civil litigation to protect protesters'

Constitutional rights.

12. Legal Observers are typically, but not exclusively, law students, legal workers (for example, paralegals or employees of a community based organization that works on legal issues) and lawyers who may or may not be licensed locally. Legal Observers are trained and directed by Guild attorneys, who often have established attorney-client relationships with activist organizations, or are in litigation challenging police tactics at political protests.

13. Since Alton Sterling's death on July 5, 2016, members of the Louisiana Chapter of the National Lawyers Guild have served as Legal Observers, represented those arrested, coordinated jail support, operated a legal hotline, and provided other forms of legal support.

14. Since July 8, 2016 when the first protesters were arrested, attorneys with the National Lawyers Guild have provided more than 2,400 hours of legal work at no cost in the past five days.

15. The Louisiana Chapter of the National Lawyers Guild has a vested interest in this particular Motion for Temporary Restraining Order and Preliminary Injunction because the named Defendants have continuously violated U.S. Citizens and others' constitutional rights and legal support for those whose rights were violated require considerable time, skill, and financial resources from our Chapter and our membership.

16. On the afternoon and evening of July 10, 2016, more than thirty members of the Louisiana Chapter of the National Lawyers Guild attended various public protests in Baton Rouge to provide Legal Observers and general legal support.

17. National Lawyers Guild attorneys, legal observers, and law students observed multiple civil and constitutional rights violations on demonstrators. They witnessed excessive use of force, tasering, tear gas, pepper spray, baton beatings, police tackling protesters on the ground, a woman's hijab being ripped off, and multiple beatings of protesters by the police.

18. National Lawyers Guild members attempted to negotiate a peaceful resolution and compromise with law enforcement leaders who are part of the named Defendants in the suit. Law enforcement supervisors were rude, disrespectful, dishonest, and

declined multiple invitations to negotiate a peaceful resolution with our most seasoned attorneys and professional negotiators.

19. National Lawyers Guild members witnessed the Defendants named in this suit arrest protesters both in public places like on sidewalks and in the private yard and homes of local residences.

20. National Lawyers Guild members witnessed law enforcement obstructing protesters from being able to disperse after permitted marches and cornered hundreds of them into a small area in the yard of a private residence with hundreds of law enforcement in full riot hgear and military assault rifles pointed at protesters with fingers on the triggers.

21. One of our professionally trained Legal Observers Andrew McDaniel had identifiable clothing recognizable as a Legal Observer and was arrested on July 10, 2016.

22. National Lawyers Guild members are now fearful of their lives in doing their work. They fear being targeted by law enforcement.

23. National Lawyers Guild members now have to bring supplies and call medics to be on standby in the event they are sprayed with tear gas or have other weapons used on them.

24. Many members of the National Lawyers Guild experienced first-hand trauma from law enforcement.

25. National Lawyers Guild members observed multiple violations of demonstrators First Amendment rights to free speech and freedom of assembly, Fourth Amendment rights, and Fourteenth Amendment Rights by the Defendants.

26. National Lawyers Guild members observed countless acts of violence by law enforcement.

27. National Lawyers Guild members would like to be able to continue to provide legal support without fear of harm or loss of life to them or demonstrators.

28. The Louisiana Chapter of the National Lawyers Guild fears that without a temporary

restraining order and subsequent injunction against the named Defendants, that the named Defendants will continue to violate thousands of citizen's Constitutional rights by wrongfully obstructing and dispersing us from public spaces; wrongfully detaining, searching, and arresting; and using illegal excessive force on demonstrators.

29. The Louisiana Chapter of the National Lawyers is requesting an injunction issued against the Defendants to protect and respect demonstrators' human, civil, and constitutional rights and to prevent the loss of life and property of citizens.

30. The Louisiana Chapter of the National Lawyers is also requesting this injunction to allow its attorneys and members to not have to use thousands of more hours of work time, skills, and financial resources to provide the necessary and emergency legal support to citizen's whose rights were violated and whose lives and property have been seriously threatened and harmed due to named Defendant's conduct.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 13th day of July 2016.

May Nguyen
Name

Signature

# Exhibit D

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| American Civil Liberties Union of Louisiana; Louisiana Chapter of the National Lawyers' Guild; New Orleans Workers' Center for Racial Justice; Black Youth Project 100; North Baton Rouge Matters, Plaintiffs, <br><br> -vs- <br><br> City of Baton Rouge; Baton Rouge Police Department; Carl Dabadie, Jr., in his official capacity as Chief of the Baton Rouge Police Department; Louisiana State Police; Louisiana Department of Public Safety; Col. Michael Edmonson, in his official capacity as Superintendent of the Louisiana State Police; East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in his official capacity as Sheriff of the East Baton Rouge Sheriff's Department; = Kip Holden in his official capacity as the Mayor-President of East Baton Rouge Parish; Hillar C. Moore, III, in his official capacity as District Attorney for East Baton Rouge Parish; Department of Public Safety (Louisiana State Police) Defendants. | CIVIL ACTION NO.: **Motion for Temporary Restraining Order and Preliminary Injunction** *Oral Argument Requested* |

DECLARATION OF NEW ORLEANS WORKERS CENTER FOR RACIAL JUSTICE

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1.  I, Saket Soni, am executive director of the New Orleans Workers' Center for Racial Justice ("Workers' Center").

2.  Formed in the aftermath of Hurricane Katrina, the Workers' Center supports three organizing projects, Stand with Dignity, the Congress of Day Laborers, and the National Guestworkers' Alliance. The Workers' Center has hundreds of members across the state of Louisiana.

3.  Since Alton Sterling's murder on July 5, 2016, many of our members and staff have attended public marches, vigils, and rallies to protest the systemic and racially discriminate brutality of the Baton Rouge Police Department and other arms of the criminal justice system that resulted in Mr. Sterling's murder. Members and staff of the Worker's Center were in Baton Rouge throughout the week following Mr. Sterling's murder working with the local community to support protest activity.

4.  The Workers' Center has participated in the public actions in Baton Rouge to publicly communicate the message that police brutality and discrimination against the Black community is pervasive and must be recognized. The Workers' Center is also participating in the demonstrations to lift up the voices, experiences, and social change demands of Baton Rouge residents.

5.  Workers' Center staff Sima Atri and Colette Tippy and Stand with Dignity members Charles Joyner and Ricky Coston have also submitted declarations in this case detailing their firsthand knowledge of threats of and indiscriminate arrests and aggressive police practices by a highly militarized police force in violation of their First Amendment rights and those of other protestors and legal observers. Their declarations include firsthand accounts of the following:

    -   Defendant(s) chase legal observers {including Workers' Center staff, who were attentively documenting the aggressive police practices;
    -   Defendant(s) named in this suit obstructed public places--namely sidewalks and streets--which inhibited protestors from being able to exercise their First Amendment right to free speech and protest against police brutality in Baton Rouge; and

1

- Defendant(s) threatened protestors engaged in peaceful and lawful activity with arrest and detention.

6.  Specifically, people of color were more likely to be targeted for arrest, more likely to stay in jail for longer, and more likely to suffer from police violence for protesting. Protesters were marched on, attacked, and arrested for expressing their opposition to police brutality against the Black community.

7.  The Workers' Center's legal department worked with the National Lawyers' Guild to coordinate legal defense for protesters who were arrested during the Baton Rouge protests following the killing of Alton Sterling by police including helping secure the release from jail of over one hundred unconstitutionally arrested peaceful protesters, documenting protesters treatment at the hands of the Baton Rouge police and in East Baton Rouge Parish Prison, and engaging in legal observing during the protests where police mass arrests occurred and engaged in violent tactics against peaceful protesters.

8.  The combination of police brutality during peaceful protests and inhumane detention conditions for protesters has caused significant fear and trauma to the members and staff of the Workers' Center. These individuals, experience this fear while all acting on behalf of the organization, and well within their First Amendment right to free speech.

9.  Some members who are dedicated to advocating against the criminalization of communities of color feel afraid to come to Baton Rouge. These members and staff are deeply committed to continued public advocacy for this cause but hesitate to come to Baton Rouge to speak out because they fear unlawful arrests and beatings.

10. Many Black Workers' Center members who are long time Louisiana residents, suffered from aggressive and violent law enforcement actions in the aftermath of Hurricane Katrina. For these members, they fear that going to Baton Rouge to express their opinions will cause them to relive past trauma from aggressive law enforcement in the aftermath of Hurricane Katrina

11. Some Workers' Center members and staff wanted to participate in first amendment protected activity in Baton Rouge but ultimately were too afraid because they feared unlawful arrests and/or detention would leave their family in a vulnerable situation. Elderly members feared that they could be seriously injured because of the police-instigated violence. Members with children felt they could not bring their children to Baton Rouge because of the volatile police-instigated violence and indiscriminate arrests, including arrests of youth. Members and staff with medical conditions chose not to attend without gravely endangering their health. These members want to express their solidarity and commitment to the cause of Black Lives Matter-oriented organizing in Louisiana. They and other similarly situated members have participated in peaceful protests in New Orleans but are prevented from expressing their opinions in Baton Rouge because of the unreasonable response of the Baton Rouge police department and other defendants.

12. Some Latino immigrant Workers' Center suffered violence from law enforcement in their home countries contributing to their choice to migrate to the U.S. Many also experience violence, sometimes at the hands of law enforcement during their migration. For these members, they fear that going to Baton Rouge to express their opinions will cause them to relive past trauma from gangs, political turmoil, aggressive law enforcement, and abusive employers. They also reasonably fear that an arrest, even if unlawful, could subject them to immigration detention and affect their ability to remain in the United States.

13. Staff in the Workers' Center Legal Department have also been inhibited in their work by actions by law enforcement. Attorneys traditionally serve as legal observers, monitoring law enforcement responses, documenting police and jail practices, and defending the constitutional rights of protestors to assembly collectively.  Law enforcement's actions aggressively advanced

2

toward legal observers, threatening to and arresting legal observers, and instigated panic has inhibited the legal staff's ability to perform their duties.

14. Even with the past actions of law enforcement, some members of the Workers' Center intend to continue to future marches, vigils and rallies in Baton Rouge related to police brutality and the police killing of Alton Sterling. This includes the scheduled funeral of Mr. Sterling on July 15, 2016. The Workers' Center Legal Department is committed to continuing to serve as legal observers, monitoring law enforcement responses, documenting police and jail practices, and defending the constitutional rights of protestors to assembly collectively.

15. But for the actions of the law enforcement, many more Workers' Center members would have engaged and would in the future engage in public actions in Baton Rouge communicating a call to support the family of Alton Sterling and for an end to the criminalization of Black members of the community.

16. The named Defendants ongoing, systemic, and violent conduct towards protesters, Workers' Center members and staff, and also the general public, has resulted in a chilling effect on the plans of the Workers' Center and its members to continue exercising their First Amendment right to free speech in Baton Rouge.

17. The Workers' Center, its members and staff fear that without a temporary restraining order and subsequent injunction against the named Defendants, that the named Defendants will continue to violate their Constitutional rights, impeding their ability to engage in constitutionally protected activity and engage in work central to the organization's mission.

18. For these reasons, the Workers' Center requests this Court enjoin Defendants from future actions impinging on the First Amendment so that its members and staff, the Baton Rouge communities, and its allies can continue to lift their collective voices through public speech and action on these important issues.


I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 13th day of July 2016.



_____
Saket Soni
Executive Director
New Orleans Workers' Center for Racial Justice

3