# Exhibit CC

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

Black Youth Project 100; New Orleans Workers' Center for
Racial Justice; American Civil Liberties Union of Louisiana;
Louisiana Chapter of the National Lawyers' Guild,

Plaintiffs,

-vs-

City of Baton Rouge; Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton Rouge
Police Department; Louisiana State Police; Louisiana
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State Police;
East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in
his official capacity as Sheriff of the East Baton Rouge Sheriff's
Department; Jeff Landry, in his official capacity as Attorney
General of the State of Louisiana; Kip Holden in his official
capacity as the Mayor-President of East Baton Rouge Parish;
Hillar C. Moore, III, in his official capacity as District Attorney
for East Baton Rouge Parish; Department of Public Safety
(Louisiana State Police)

Defendants.

CIVIL ACTION
NO.:

**Motion for Temporary
Restraining Order and
Preliminary Injunction**

*Oral Argument
Requested*

## DECLARATION OF ANDREW MCDANIEL

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Andrew McDaniel. I was born 12/24/90.

2. I work for the Southern Poverty Law Center. I received my legal observer training
from the National Lawyers Guild. I attended a protest in downtown Baton Rouge on
Sunday July 10, 2016. I was working as a legal observer.

3. I left the protest at the capitol and headed to the Wesley United Methodist Church. I
was given an assignment to work with Tarana down Government street where there were
cops amassing near the protesters. We were standing on the neutralground on East on the
France side of Govt St. Then we moved to the corner of East and Govt. The protests were
completely peaceful.

4. I heard one police officer say to another "we're going to give them a few minutes."
They began taking out their zip ties.

5. I saw BRPD and Sheriffs in riot gear staging the area. I saw a Black male approach the
officers and try to ask how we could keep the demonstration safe.

6. I saw a protestor being arrested. As far I know, he never entered the street. He was on the sidewalk when he was arrested.

7. I started to walk towards him to get his name and date of birth. The police officer told me to get back. I started walking backwards as I continued to ask for Michael's name and DOB. The police officer gestured towards me and told the officer next to him "get him on 15." The next thing I knew, the other officer began arresting.

8. I later learned that his name was Michael Martin because I spoke with him at the jail. He had told the officer that he needed to get to his car to go to work. As he walked to his car, police officers arrested him. They charged him with obstruction of a highway, which is the same thing they charged me with.

9. I felt useless because I was there to get the information of people arrested, and they arrested me.

10. There were over 20 of us in a holding cell for about 12 hours. There was little space. Then they moved us to another part of the general population part of the prison. They were trying to intimidate us.

11. Lynn Smith, a protestor arrested with me, was maced in the face even though he was not being violent at all. At another point, the same officer came by our cell and maced the entire cell. This officer was a big, fat white officer.

12. I do plan to continue to legal observe.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of July 2016.

Signature

# Exhibit DD

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

American Civil Liberties Union of Louisiana; Louisiana
Chapter of the National Lawyers' Guild; New Orleans Workers'
Center for Racial Justice; Black Youth Project 100,

                                        Plaintiffs,

                    -vs-

City of Baton Rouge; Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton Rouge
Police Department; Louisiana State Police; Louisiana
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State Police;
East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in
his official capacity as Sheriff of the East Baton Rouge Sheriff's
Department; Jeff Landry, in his official capacity as Attorney
General of the State of Louisiana; Kip Holden in his official
capacity as the Mayor-President of East Baton Rouge Parish;
Hillar C. Moore, III, in his official capacity as District Attorney
for East Baton Rouge Parish; Department of Public Safety
(Louisiana State Police)

                                        Defendants.

**CIVIL ACTION**
**NO.:**

**Motion for Temporary**
**Restraining Order**
**and Preliminary**
**Injunction**

*Oral Argument*
*Requested*


## DECLARATION OF EJIKE OBINEME


Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Ejike Obineme, and I am from NEW ORLEANS, Louisiana.
2. I am a member of the group BYP100. Through this group I have participated in the organizing of the Black community in New Orleans around issues that affect us, including criminalization and police brutality.
3. I was participating in the protests taking place on July 10th in Baton Rouge, Louisiana following the killing of Alton Sterling.
4. On that day, I was among a group of protesters who were gathered peacefully when we were approached by a large number of police.
5. The police moved to the front of crowd in a wide formation. At random times some of the police would take a couple steps forward together, which scared people and caused them to run and trip over each other. In this way the police made people appear more dangerous.
6. This was a clear violation by the police of the people's right to peacefully protest. Police, tased people and used intimidation to disrupt the protest and incite reactions.

7. I wanted to stand in solidarity with other people in Baton Rouge. I wanted to engage with that community in their loss and to build short and long term strategies with them to address the issues affecting all of us.

8. I protested because I wanted to say that what happened to Alton Sterling was wrong and that we need to hold police accountable. These issues are felt at a national scale and must be addressed.

9. The injustices cannot continue and the Black community needs to show the world that we are not actually free. We need to seek redress for what has actually happened and to encourage others to stand up. The true functioning of the police is obvious in these high-profile killings.

10. Based on what I saw that night in Baton Rouge, I can say that the police are not engaged in protests to keep the community safe. They see how organizers, community members, and protesters are ready to educate and stand up for justice, and the police's response is to agitate and to scare people out of voicing their rights.

Executed on this 12th day of July 2016.

Ejike Obineme

# Exhibit EE

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

American Civil Liberties Union of Louisiana; Louisiana
Chapter of the National Lawyers' Guild; New Orleans
Workers' Center for Racial Justice; Black Youth Project 100,

                                        Plaintiffs,

                    -vs-

City of Baton Rouge; Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton
Rouge Police Department; Louisiana State Police; Louisiana
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State
Police; East Baton Rouge Sheriff's Department; Sid J.
Gautreaux III, in his official capacity as Sheriff of the East
Baton Rouge Sheriff's Department; Jeff Landry, in his official
capacity as Attorney General of the State of Louisiana; Kip
Holden in his official capacity as the Mayor-President of East
Baton Rouge Parish; Hillar C. Moore, III, in his official
capacity as District Attorney for East Baton Rouge Parish;
Department of Public Safety (Louisiana State Police)

                                        Defendants.

CIVIL ACTION
NO.:


**Motion for
Temporary
Restraining Order
and Preliminary
Injunction**

*Oral Argument
Requested*

---

## DECLARATION OF WILLIAM P. QUIGLEY

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. I am an attorney and law professor at Loyola University New Orleans where I
   head up the clinical programs and supervise students in the prosecution offices in
   New Orleans and Jefferson Parish. I have been teaching at Loyola for over 25
   years.

2. On July 11, 2016, I was in Baton Rouge as a legal observer for the youth march
   and protest. The march started at the Wesley United Methodist Church at 544
   Government Street in Baton Rouge. The march went from there to the Louisiana
   Capital and back over the time period of approximately 3:40 pm to 5:30 pm. Well
   over a thousand people participated. All the law enforcement personnel we
   encountered during that event were professional, peaceful, cooperative and
   respectful.

3. After the march was completed back at the church I noticed a number of Baton
   Rouge law enforcement vehicles roar out of the neighborhood and race down the
   street towards the interstate. I walked from the church to the several blocks to a

scene with many Baton Rouge police vehicles and some sort of standoff going on between officers and a crowd of people.

4.  I introduced myself to one officer and was directed to talk with an officer who was said to be in charge. When I asked the officer how I could help he told me to tell people they had to clear the street in ten minutes or they were going to start arresting people.

5.  I went to talk to talk to another legal observer and together we talked with people in the crowd and passed on what the police officer said. Most people got out of the street and crossed over the street to the sidewalk on the other side of the street.

6.  Then people saw a line of police in black uniforms and in green uniforms started coming down a side street along with a military looking vehicle. The vehicle and officers came down the side street towards the intersection and the vehicle started emitting an extremely loud shrieking noise.

7.  Some people then went into the street to non-violently stand in front of the vehicle and were arrested by the police. At about the same time I saw one legal observer in a green hat, who was standing on the sidewalk about 100 feet away, get arrested and taken away.

8.  After this the police formed up into a squadron of some sort on one side of the street, the side closest to the interstate, and started putting on gas masks, or face shields, shin guards and pulled out long guns of some sort. After that some officers ran into the crowds which were on the sidewalk across the street from where police had set up and started pulling people out of the crowd and dragging them back across the street and arresting them. These people were not in the street at all but on the sidewalk or in the yard across the street.

Executed on this 12th day of July 2016.

William P. Quigley

# Exhibit FF

# DECLARATION OF NADIA SALAZAR

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.  My name is Nadia Salazar. My date of birth is ___08 ( 13 (1971___ .

2.  I am a Bolivian immigrant and a community organizer with VAYLA, a multi-racial community-based organization in New Orleans.

3.  I attended the protest with my husband, Antonio to show support for other people of color.

4.  We were at the edge of the protest and were trying to get to our car to look for a friend. While I was standing on a corner on the sidewalk, officers in riot gear snuck up on my husband and I. One approached from the right and one approached from the left. The officers tackled us to the ground, knocking the wind out of me.

5.  The officers zip tied my hands very, very tightly, then lifted me off of the ground. The zip ties were really tight and turned my hands purple. I kept asked for them to be loosened up; finally they did cut the ties and replace them more loosely.

6.  They walked Antonio and I toward large vehicles. When my husband asked why we were being arrested, the officers responded, "I don't know."

7.  The officers then separated me from my husband. I told him, "Baby I love you, I'm fine."

8.  I remember hearing a lot of screaming. There were at least two different groups of law enforcement. The ones in grey were nicer than those in blue.

9.  The officers loaded us into vans, but did not put us in seatbelts.

10. In the jail, I lead people in songs to keep their spirits up. But we were warned to be quiet or we will be maced. NS

11. At the jail, I was strip-searched twice. Before we could go into the main jail, the officers made me take off my bra because it had a metal underwire. I noticed that they did not ask white women to do this. Even when she noted that her bra had underwire NS

12. I was part of the last group taken into the main jail and was given nothing. There were no blankets, and it was freezing cold. Several people said felt like it was in the 40's.

13. Many women told me of terrible conditions inside the jail with dirt and blood on the walls and no tampons available. They also told me that women don't see

attorneys for up to 60 days.

14. As a non-black person of color, it is my responsibility to show up and support this movement. I would do it again tomorrow.

15. I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 12th day of July 2016.

Nadia Salazar

# Exhibit GG

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

American Civil Liberties Union of Louisiana; Louisiana
Chapter of the National Lawyers' Guild; New Orleans Workers'
Center for Racial Justice; Black Youth Project 100,

                                                    Plaintiffs,

                    -vs-

City of Baton Rouge; Baton Rouge Police Department; Carl
Dabadie, Jr., in his official capacity as Chief of the Baton Rouge          CIVIL ACTION
Police Department; Louisiana State Police; Louisiana                        NO.:
Department of Public Safety; Col. Michael Edmonson, in his
official capacity as Superintendent of the Louisiana State Police;
East Baton Rouge Sheriff's Department; Sid J. Gautreaux III, in
his official capacity as Sheriff of the East Baton Rouge Sheriff's          **Motion for Temporary**
Department; Jeff Landry, in his official capacity as Attorney               **Restraining Order**
General of the State of Louisiana; Kip Holden in his official               **and Preliminary**
capacity as the Mayor-President of East Baton Rouge Parish;                 **Injunction**
Hillar C. Moore, III, in his official capacity as District Attorney
for East Baton Rouge Parish; Department of Public Safety                    *Oral Argument*
(Louisiana State Police)                                                    *Requested*

                                                    Defendants.


DECLARATION OF KAREN SAVAGE

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is Karen Savage. I was born on December 21, 1965. I am a reporter
   with the Juvenile Justice Information Exchange. I have press credentials.
2. Since I began journalism school in September 2015, I have reported on several
   protests in New York City, as well as the protests in New Orleans on Friday, July
   8. In addition, as a citizen-activist, I have attended between 30 and 40 protests.
3. I was present at the protests in Baton Rouge on Saturday, July 9 and Sunday, July
   10.
4. At the protest on Saturday, July 9, my team and I were at the Triple S. We took
   some pictures and tried to talk to some people from the neighborhood.
5. Then we went over the Airline where we saw people being arrested and thrown to
   the ground. A short white female officer had an assault-style weapon out. She
   had it up and was aiming it at the protestors and waving it back and forth. This
   officer was also present at the protests on Sunday and in a sea of officers that
   were aggressive, she was particularly aggressive.
6. There was a tank-like vehicle and the officers were wearing combat gear even
   though the crowd was not that big. I feel that this was an extreme military-style

response and was one of the most ridiculous things that I have ever seen; this feeling was exceeded on Sunday.

7. On Sunday, July 10, I was late to the protest because I was stuck in traffic. When I arrived, people were deciding what to do and where to go. There was no discussion of violence. Before anyone could do anything, officers wearing gas masks and carrying shields began to come down the street. You could see them from a long way off because of the tank-like vehicle.

8. I moved up the embankment on the street and began to take pictures. The police began yelling at us to get down, to stop taking pictures, and that we were on private property.

9. The police used the noise-making machine on and off for about 10 minutes. In response, people began to chant "Black Lives Matter" and "Justice for Alton Sterling." From my position, the noise was loud and annoying, but was not ear-splitting. It seemed to set a tone for a military event as if the message was, "We are here to force you home."

10. For the next forty minutes or so, there was a standoff. The police told everyone to get off the street, which people did and got onto the sidewalk and later into the yard when the owner of the house gave her permission. The protestors were chanting from behind the fence on that property and the intersection was clear with the exceptions of a few reporters on the neutral ground taking pictures.

11. I did not see anyone in the crowd throw anything. It was a very diverse crowd with children, young people, and old people—a woman with a walker and a man with a cane.

12. Officers then appeared at both ends of the street in combat gear. They kept moving closer and closer until we were boxed in. People began to run and officers were chasing them. Officers ran up onto the yard and even onto the porch of the house. They seemed to be arresting people randomly. I moved away towards the McDonald's.

13. I took pictures of an arrest. The police saw me and looked right at me. I could tell they were angry. I continued moving away, staying as much on the sidewalk as I could, though when the sidewalk was blocked by a dumpster, I had to step out onto the street. I tried as hard as I could to stay on the sidewalk.

14. I ran into the McDonald's parking lot. While I was standing in the landscaping there, an officer grabbed me from behind. He then shoved me forward, and I fell. He said that I was resisting arrest and that I didn't listen. I told him that I am a journalist and said that he could go into my pocket and get my credentials. I didn't want to reach into my pocket in case that made him angry. Eventually, I stopped saying that I was a journalist because this just seemed to make him angrier. At that point, the crowd had moved on and there were fewer people in the parking lot to see what was going on. The officers continued pulling me up and pushing me down repeatedly. While I was standing up, they put zip ties on me.

15. The zip ties were ridiculously tight. I respectfully asked for them to be loosened and was told that they did not have the tool. My hand was numb, my arm was hurting, and my hand was turning purple. One officer showed a large serrated knife and said, perhaps jokingly, that they could use it to remove the zip tie; I

think he was trying to play with me. At this point, I stopped talking to the officers since being respectful wasn't working.

16. I shouted out an email address of my editor to a friend standing across the street, but was having a difficult time remembering it through the pain. The officers came into my face and told me to shut up and then took me further down the street.

17. The officer who put the zip ties on me then handed me off to a much calmer officer. I asked him to loosen the zip ties. He looked at them and said "What the hell did they do to you?" He told me that when we got "down there" someone would have a tool to remove the tie.

18. About three blocks away, they gave me to an officer who filled out a report. One officer said "Thomas 10385." I don't know whether that was the first officer who put me in zip ties or the second officer.

19. At this point, I was dizzy with pains up and down my arm. The officers had to struggle to get the tool underneath the zip tie to cut it off. It took them a while to do so and I was screaming with pain. They cut if off and put on a second pair of zip ties, which were not so tight.

20. They asked me my name and date of birth. The officers searched me. They did leave me with my phone so I was able to speak to my editor and then text my daughter.

21. The woman next to me was crying. She was with a seventeen-year-old. They had had a five-year-old with them who was taken by protective services; their dog was taken away as well. I was trying to calm them down.

22. I never imagined that this kind of protest would have this kind of police reaction. The people did not seem to want to be arrested. I was really surprised at the huge police presence and reaction.

23. The van they put us in had space for 13 people in the back but they put 14 of us in there. There were seatbelts, but we were not belted in and could not belt ourselves in because we were handcuffed.

24. We were taken to East Baton Rouge Parish Prison. We were searched and sent through a metal detector. We were placed in a cell that only two benches or beds, but at one point there were 24 people in the cell. There was not even enough room from everyone to sit down. Some people had to stand as if we were on a subway car. We remained in that cell for about 5 hours. From time to time, some of us would be taken out for fingerprinting.

25. At one point, people began singing. A large white officer said, "You will stop singing or you will be gassed," while pointing to a can of mace or pepper spray that was attached to his left shoulder. We knew that whatever was in the can, it wasn't good.

26. The officers used pepper spray on a cell holding some of the men. We didn't see it, but we could smell it. It wasn't hard to breathe, but it made our eyes water and caused us to sneeze and cough. One officer had to leave the building to get some fresh air because of the smell.

27. After about five hours in the first cell, they took us out and gave us green uniforms of the prison. They didn't have enough jackets.

28. Before we went into the general population, we were strip searched six at a time by a female officer.

29. As we were lined up waiting to go into general population, someone handed us blankets. Inside the main prison, it was freezing cold; there was cold air blowing on us. The bunk beds inside the cell were full and so some of us got cots on the floor in the common area.

30. We were taken to court around 1pm; Judge Jackson appeared by video. We were all charged with the same thing (obstructing a highway and resisting arrest); some people said our arrest forms had been pre-printed with the charges. Because my bail had already been posted, I didn't have to go into the general population again. I stayed in the holding cell outside the court.

31. It seemed to me that the white prison staff members were angry at us. In the next cell there were people who asked for medical help and the officers were mean to them. One woman asked for insulin. I don't know if she got it.

Executed on this 12th day of July 2016.

Karen Savage

# Exhibit HH

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

American Civil Liberties Union of Louisiana; Louisiana
Chapter of the National Lawyers' Guild; New Orleans
Workers' Center for Racial Justice; Black Youth Project
100,

Plaintiffs,

-vs-

City of Baton Rouge; Baton Rouge Police Department;
Carl Dabadie, Jr., in his official capacity as Chief of the
Baton Rouge Police Department; Louisiana State Police;
Louisinana Department of Public Safety; Col. Michael
Edmonson, in his official capacity as Superintendent of the
Louisiana State Police; East Baton Rouge Sheriff's
Department; Sid J. Gautreaux III, in his official capacity as
Sheriff of the East Baton Rouge Sheriff's Department; Jeff
Landry, in his official capacity as Attorney General of the
State of Louisiana; Kip Holden in his official capacity as
the Mayor-President of East Baton Rouge Parish; Hillar C.
Moore, III, in his official capacity as District Attorney for
East Baton Rouge Parish; Department of Public Safety
(Louisiana State Police)

Defendants.

**CIVIL ACTION
NO.:**

**Motion for
Temporary
Restraining Order
and Preliminary
Injunction**

*Oral Argument
Requested*

DECLARATION OF MARINA SPARAGANA

1. My name is Marina Sparagana. I was born on April 9, 1990. I am writing this statement in support of a temporary restraining order and preliminary injunction filed in federal court to enjoin the City of Baton Rouge, Baton Rouge Police Department, Louisiana State Police, Louisiana Department of Public Safety, East Baton Rouge Sheriff's Department, the State of Louisiana and East Baton Rouge District Attorney's Office from their ongoing violation of my constitutional rights.

2. I am a resident of Orleans Parish.

3. I traveled to Baton Rouge, Louisiana on July 10, 2016 to participate in a peaceful march against police brutality and in protest of Alton Sterling's homicide.

4. The March went down East Boulevard. The police confronted the march and would not let marchers pass on the street or on the sidewalk.

5. I was on the sidewalk with a group of protesters, when the police attacked us and forced others and myself onto the yard of a private residence. We were invited and allowed to come onto the resident's yard. I understand now that her name was Ms. Batiste.

6. There were so many police that it was absolutely impossible for me to continue protesting or to continue marching. I became frightened by how many police were present. I could not leave. The police were blocking the street and the sidewalk.

7. While I was on Ms. Batiste's yard a police officer in a full SWAT uniform pointed what I believe to be a machine gun at me. I was astonished and scared by such brute and unprovoked violence against me by the police.

8. At that point, I felt scared and wanted to leave because of the police brutality and aggression I was experiencing. I still wanted to exercise my First Amendment rights and speak out publicly and gather with others against police brutality and the wrongful killing of Mr. Alton Sterling, but felt unsafe.

9. I could not leave because the sidewalks and street remained blocked by the police.

10. Then two police officers grabbed me off of the yard. They lifted me in the air and carried me to the neutral ground of East Boulevard.

11. I was arrested. They had me kneel down on the neutral ground and they put zip ties on me. They walked two block away to an area where there were several police vans waiting. They began lining up protesters with zip ties on the curb and taking our personal property and filling out arrest forms.

12. I witnessed Baton Rouge Police Department bring a very distraught young girl in zip ties to the curb, and sat her next to me. Then they brought her mom, also in zip ties, and sat her down next to the young girl. Then the young girl explained that she had been standing blocks away from the protest, next to her car, watching her five-year-old brother who was in the car while their mother was protesting in the protest blocks away. The young girl said she was not participating in the protest but SWAT team members grabbed her and took her away from her young brother. He was left alone in the car in the middle of the city. Her mother corroborated that story.

13. For several minutes, multiple police officers who had heard this story ignored it. Several of the other arrested protesters kept bringing it up, and eventually one officer said to the mother and daughter "did you learn your lesson" and refused to investigate the child in the car until they said yes.

14. I saw the mother and daughter later in the holding cells, and they separated them and wouldn't let them be in the same holding cell.

15. While I was in the holding cell, I recognized a woman who had been in the van with me. Her name was Samantha Nicolos and she had multiple contusions on the side of her head and the side of her head was swelling. She said that an officer had stepped on her head with all of her weight. She felt disoriented and confused and said that the lights hurt her eyes. I tried to track her eyes with my finger and they were having trouble tracking. We kept asking for her to see a

medic. The guard said that she had seen one but she said that this was untrue. He also said that there wasn't a medic in the building even though I could see one down the hall looking at other people.

16. Sometime around 10:30pm, a medic in blue scrubs came by, poked his head into the cell, and said "everyone's fine." Then we said "can you please look at her, we think she has a mild concussion." He said "I'm looking at her." Samantha Nicolos said "you never took my vitals or did a state of consciousness test, I could have a concussion." We had a registered EMT named Blair Brown in the cell with us, who told us that she needed a state of consciousness test. The medic said "I'm not the hospital" and walked away.

17. There was also a protester who had already been processed out of jail, being kept in the holding cell with us. She told us that when they asked her to sign her bond papers in order to leave, she asked to read them, and they denied her the time to do so. They told her she would be put back in the holding cell as a result.

18. I also overhead people in a different holding cell singing gospel songs and being told that they would be maced as a result. A few seconds later, everybody in my holding cell started coughing and our eyes started burning. We could barely breathe and assume they had been maced.

19. I have plans to return to future marches, vigils, protests and rallies in Baton Rouge against police brutality. In particular, I would like to attend public events scheduled for Friday July 15, 2016. However, the behavior by the Defendants on July 10, 2016 has had a chilling effect on whether I will return. The police blocking the sidewalks and other public places, and their violence toward myself and other protesters in attempts to disperse us are deterring me from returning to Baton Rouge.

20. I do not believe in police violence and am upset by the homicide of Alton Sterling. I want to be able to lawfully express my concerns and opinions as guaranteed by the First Amendment of the United States Constitution. I also do not want to be illegally detained, searched and arrested like I was on July 10, 2016. Consequently, I am concerned that because of the political speech that I plan to express should I return, that I will be subject to such violations of my constitutional rights as described above by the named Defendants.

21. As such, I and the other plaintiffs would like to see this Court enjoin the Defendants from further activity that violates the publics right to free speech and lawful assembly.

22. I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 12th day of July 2016.

Marina Sparagana